1

2

3

4

5

6

7

8

9

10

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CARYN COLLAZO; KYM HALL; CINDY PETERSON; CAROL SAUER; KRIS THORSEN MICHELS; and AMANDA TAPSCOTT, | Case No. 2:15-CV-01974-ODW-AGR |
| Plaintiffs, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS [23]** |
| v. | |
| WEN BY CHAZ DEAN, INC.; GUTHY-RENKER LTD.; GUTHY-RENKER PARTNERS, INC.; and GUTHY-RENKER LLC, | |
| Defendants. | |

## I.    INTRODUCTION

Pending before the Court is a Motion to Dismiss filed by Defendants WEN by Chaz Dean, Inc., Guthy-Renker Ltd., Guthy-Renker Partners, Inc., and Guthy-Renker LLC.   (ECF No. 23.)   In their putative Class Action Complaint, Plaintiffs Caryn Collazo, Kym Hall, Cindy Peterson, Carol Sauer, Kris Thorsen Michels, and Amanda Tapscott (collectively "Plaintiffs") allege six causes of action, including violations of two California consumer protection statutes.  (ECF No. 1.)  Defendants now move to

dismiss both consumer protection causes of action on grounds that an extra-territorial application of the laws is improper and the claims were not plead with the proper specificity under Federal Rule of Civil Procedure 9.  For the reasons discussed below WEN's motion is **DENIED.**[1]

## I.   BACKGROUND

"WEN by Chaz Dean" is a hair care product line developed by Los Angeles-based hair stylist, Chaz Dean, in collaboration with Guthy-Renker, a large direct-marketing company.  (Compl. ¶ 26.)  WEN products are primarily distributed through direct marketing techniques, including infomercials, television ads, magazine ads, QVC, and the WEN website.  (*Id.* ¶ 26.)  Defendant Wen by Chaz Dean, Inc. is a California corporation with its principal place of business in Santa Monica, California.  (*Id.* ¶ 20.)  Defendants Guthy-Renker, Ltd., Guthy-Renker Partners, Inc., and Guthy-Renker LLC are Delaware corporations with their principal place of business in Santa Monica, California.  (*Id.* ¶¶ 21–22.)

In their Complaint, Plaintiffs allege that they purchased WEN hair care products after viewing Defendants' various advertisements, which consisted of an "extensive marketing campaign, including the use of ubiquitous infomercials and television advertising with celebrity testimonials, the Internet and widely circulated popular style and fashion magazines."  (*Id.* ¶¶ 6, 46–51.)  Defendants advertised that WEN products would leave "their hair smoother, shinier, stronger, fuller, more manageable with no frizz" and that the products would also "limit or repair damage as a result of other hair treatments."  (*Id.* ¶ 2.)  However, each Plaintiff alleges "extreme hair loss and damage" after using the products "as instructed."  (*Id.*  ¶¶ 46–51.)  Plaintiffs claim that "one or more of [WEN] products acts as a depilatory or caustic agent," that damages the hair strand and/or follicle, and that Defendants failed to disclose and properly warn Plaintiffs of this hazardous ingredient.  (*Id.* ¶¶ 2–4.)

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

Plaintiffs contend that Defendants knew or should have known of WEN's hazards, but they "continued to conceal the dangers of the products" and continued to claim that WEN products were "safe when properly applied." (*Id.* ¶ 4.)

Plaintiffs make numerous allegations that WEN, Chaz Dean, and Guthy-Renker misrepresent the ingredients, safety, and effects of their products. (*Id.* ¶¶ 63–80.) Specifically, Plaintiffs point to allegedly false and misleading statements found on Chaz Dean's, Guthy-Renker's, and WEN's websites. Chaz Dean's website states: "[Chaz Dean] believes in a natural, healthy lifestyle … dedicate[ed] to harmony and holistic methods." (*Id.* ¶ 24.) WEN's website states: "WEN isn't like an ordinary shampoo so you want to use more of it, not less. You can never use too much! The more you use, the better the results." (*Id.* ¶ 27.) The website continues: "[WEN] cleanses hair thoroughly without lathering or harsh ingredients. It's designed not to strip your hair and scalp of natural oils, leaving your hair with more strength, moisture, manageability and better color retention." (*Id.*) WEN's website allegedly states that "WEN has no harsh ingredients . . . ." (*Id.* ¶ 29.) Guthy-Renker's website states: "[Guthy-Renker] is one of the largest and most respected direct marketing companies in the world" and "since 1988 has discovered and developed dozens of well-loved, high quality consumer products in the beauty, skincare, entertainment and wellness categories." (*Id.* ¶ 26.)

Plaintiffs argue that Defendants' representations continued to "perpetuate and create a false public perception that there was little or no risk from the use of [WEN products]," thus violating the California's consumer protection laws. (*Id.* ¶ 11.) Each Plaintiff hails from a different state: (1) Caryn Collazo is a citizen of Florida; (2) Kym Hall's a citizen of New Jersey; (3) Kris Thorsen Michels is a citizen of Hawaii; (4) Cindy Peterson is a citizen of Minnesota; (5) Carol Sauer is a citizen of North Carolina; and (6) Amanda Tapscott is a resident of Indiana. (*Id.* ¶¶ 14–19.)

The Complaint, which was filed on March 17, 2015, raises six causes of action: (1) breach of warranty; (2) violation of California's Unfair Competition Law

("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (4) failure to warn negligence; (5) failure to test negligence; and (6) strict product liability.  (*See* ECF No. 1.)  Defendants filed their Motion to Dismiss on May 26, 2015.  (ECF No. 23.)  Defendants' Motion seeks to dismiss Plaintiffs' UCL and FAL causes of action. Plaintiffs filed a timely Opposition on June 22, 2015 (ECF No. 30), and Defendants a timely Reply on June 29, 2015 (ECF No. 33).

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted).  "If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining

4

whether the plaintiff can prove any set of facts in support of the claim." *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (internal citations omitted). The Court may consider contracts incorporated in a complaint without converting a motion to dismiss into a summary judgment hearing. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

**B.   Federal Rule of Civil Procedure 9**

Rule 9 states that an allegation of "fraud or mistake must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required by Rule 9(b) are the "who, what, when, when, where, and how" of the fraudulent activity. *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false." *Id.* The heightened pleading standard ensures that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

## III.   DISCUSSION

In its Motion to Dismiss, Defendants challenge Plaintiffs' California consumer protection claims. First, Defendants argue that Plaintiffs cannot assert claims under the UCL or FAL because Plaintiffs are not California residents and did not suffer their injuries while in California. (Mot. 5–6.) Second, Defendants argue that Plaintiffs' Complaint lacks sufficient specificity as required under Rule 9. (*Id*. at 6.)

**A.   Plaintiffs' UCL and FAL Claims Do Not Seek Extraterritorial Application of California Law.**

Defendants argue that Plaintiffs' California consumer protection claims must be dismissed because Plaintiffs do not allege that the harm occurred *inside* California.

/ / /

/ / /

(*Id*. at 5–6.)[2]  According to Defendants, because Plaintiffs did not live in California when they saw Defendants' advertisements or when they used WEN products, Plaintiffs cannot avail themselves of California's statutory consumer protection laws. (*Id*.)  WEN believes that Plaintiffs are only protected by the consumer protection laws of their home states or of the states where the advertisements actually originated.  (*Id*.)

"Whether a nonresident plaintiff can assert a claim under California law is a constitutional question based on whether California has sufficiently significant contracts with the plaintiff's claims."  *Forcellati*, 876 F. Supp. 2d at 1160 (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–90 (9th Cir. 2012)).  With respect to California's consumer protection laws, such as the UCL and FAL, non-California residents are foreclosed from bringing such claims "where none of the alleged misconduct or injuries occurred in California."  *Churchill Village, LLC v. Gen. Elec. Co.,* 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (citing *Norwest Mortg. Inc. v. Super Ct.*, 72 Cal. App. 4th 214, 222 (1999)); *see also Tidenberg v. Bidz.com, Inc.,* No. 08-cv-5553, 2009 WL 605249, *4 (C.D. Cal. Mar. 4, 2009) ("The critical issues here are whether the injury occurred in California and whether the conduct of the Defendants occurred in California.  If neither of these questions can be answered in the affirmative, then Plaintiff will be unable to avail herself of [the UCL and FAL].").  In deciding whether California's consumer protection laws should apply, courts consider the defendant's residency, the plaintiff's residency, and "where decisions about the behavior in question were made."  *Wilson v. Frito-Lay N. Am., Inc.,* 961 F. Supp. 2d 1134, 1148 (N.D. Cal. 2013).

/ / /

---

[2] In its Motion to Dismiss, Defendants originally challenged Plaintiffs "standing" to bring suit. (Mot. 3.)  Defendants wisely abandoned this argument in its Reply. *See Forcellati v. Hyland's, Inc.,* 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (explaining the difference between a plaintiff's misguided "standing" argument and the choice of law analysis necessary to apply the UCL outside of California).

1     Here, there is no dispute that Plaintiffs neither live nor suffered their alleged

2  injuries inside California.  The critical issue then becomes: where did the decisions

3  regarding the alleged misconduct occur?  *See Churchill Village,* 169 F. Supp. 2d at

4  1126; *Wilson*, 961 F. Supp. 2d at 1148.  This Court must determine where decisions

5  regarding WEN's product ingredients and product advertisements—the alleged

6  misconduct in this case—occurred.  The Complaint clearly alleges that WEN by Chaz

7  Dean. is incorporated in California and has its principle place of business in

8  California.  (Compl. ¶ 20.)  The Complaint also alleges that Defendants Guthy-Renker

9  Ltd., Guthy-Renker Partners, Inc., and Guthy-Renker LLC have their principle place

10  of business in California.  (*Id.* ¶¶ 21–22.)

11     Defendants argue that allegations regarding their citizenship is not enough to

12  demonstrate that the alleged harmful conduct—the manufacturing, distributing, and

13  advertising a harmful product—occurred in California.  (Mot. 5.)  In its Reply,

14  Defendants claim that "[a]llowing such a conclusion would require this Court to make

15  an inference that is unreasonable to the point of becoming a purely arbitrary mandate."

16  (Reply 4.)

17     The only unreasonableness is Defendants' insolent argument, which is severely

18  misguided for several reasons.  First, Defendants' impudent assertion is unsupported

19  by any controlling law.  In fact, there is not a single published case that suggests a

20  California company, with a principal place of business and headquarters in California,

21  cannot be sued in California for violating California consumer protection laws.

22  Defendants principally rely on the California Court of Appeals decision in *Norwest*

23  *Mortgage*, however, this case does Defendants no favors.  In *Norwest Mortgage,* the

24  defendant was incorporated in California, but had its principal place of business and

25  headquarters in Iowa.  *Norwest*, 72 Cal. App. 4th at 217.   A group of plaintiffs, to

26  include non-California residents, challenged a business practice that was created at the

27  Iowa headquarters and implemented from the Iowa headquarters.  *Id*. at 218.  Relying

28  on the Due Process Clause of the Fourteen Amendment, the court held that the non-

California residents could not bring UCL claims against the defendant. *Id.* at 226. The court explained that while the defendant's place of incorporation permitted personal jurisdiction in California, this was the *only* California connection between the defendant and the non-California plaintiffs. *Id.* at 227. Such a connection cannot subject a party to all laws of the forum. *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985)). The *Norwest Mortgage* court concluded that "[b]ecause [the defendant's] headquarters and principal place of business, the place [the non-California plaintiffs] were injured, and the place the injury-producing conduct occurred are outside California, we conclude application of the UCL to the claims of [non-California] plaintiffs would be arbitrary and unfair and transgress due process limitations." *Id.*

Similar to *Norwest Mortgage*, numerous other courts have relied on the defendant's principle place of business and headquarters location in determining whether the UCL or FAL apply. *See, e.g., Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) ("Defendants are headquartered in California and their misconduct allegedly originated in California. With such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants."); *Forcellati*, 876 F. Supp. 2d at 1160 ("[The New Jersey] Plaintiff alleges that Defendants are headquartered in Los Angeles, California. Therefore, application of California law poses no constitutional concerns."); *Wilson,* 961 F. Supp. 2d at 1148 (finding a Texas corporation cannot be sued by non-California residents in California under the UCL and FAL when the Texas corporation only advertised and sold products in California); *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 613 (1987) (concluding that non-California residents could assert claims under California law when the defendant's principal officers were in California and the alleged fraudulent misrepresentations were prepared in California).

/ / /

8

Second, the practical consequence of Defendants' argument highlights the absurdity of its position.  In arguing that its principal place of business is not dispositive to the inquiry, Defendants argue that "[i]n reality, the WEN marketing, the website hosting, the television commercials (all of which Plaintiffs' allege they viewed) could have originated in any state."  (Reply 4.)  Defendants want the Court to believe that no decision-making originates from its *principal place of business*.  Instead, all decisions regarding product ingredients and advertising is done by third-party marketing agencies or web-hosting companies located in some mysterious location.  If Defendants use a web-hosting service out of Russia, then Defendants believe it should only be subject to Russia's consumer protection laws for all web-based consumer protection claims.  After all, that is where the conduct "originated."

Not only is there no authority to support this position, but it stretches all logic.  Decisions regarding contents of a product and advertising a product are decisions that inherently begin and end at a company's principal place of business.  Defendants are not blind to the contents of its products or the advertising promoting its products, nor can it avoid liability under California law by burrowing its head in the sand.  The Court rejects Defendants' claim that the Plaintiffs failed to allege where the harmful conduct originated.

Third, Defendants failed to carry its burden of proving California's consumer protection laws do not apply.  A defendant challenging the assertion of a California statutory cause of action by out-of-state plaintiffs carries a "burden to defeat the presumption that California law applies and to 'show[ ] a compelling reason justifying displacement of California law."  *Forecellati,* 876 F. Supp. 2d at 1160 (quoting *Rasidescu v. Midland Credit Mgmt., Inc.,* 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007)).  The Court soundly rejects Defendants assertion that all of its marketing and product-composition decisions—the alleged wrongful conduct in this case—originate anywhere else than the state where all Defendants have their principle place of business.  Defendants failed to carry this burden by asserting unreasonable and legally

unfounded claims.  As a result, the Court concludes that there is no constitutional, legal, or practical concern with Plaintiffs' decision to bring claims under the UCL and FAL.  The Court rejects Defendants' first argument.

**B.    Plaintiffs' Consumer Protection Claims are Plead With Sufficient Particularity to Satisfy Rule 9.**

Defendants argue that Plaintiffs' UCL and FAL claims, both based on the same "fraudulent course of conduct," should be dismissed for failure to meet the heightened pleading standard under Rule 9(b).  (Mot. 6.)  Defendants contend that the allegations are conclusory and do not state with particularity "which statements each Plaintiff saw or read before making the purchase, which statements each Plaintiff found material, or which statements each Plaintiff relied upon in deciding to purchase a WEN product." (*Id.* at 7.)  Defendants also argue that Plaintiffs fail to distinguish between Defendants in alleging fraudulent conduct.  (*Id.*)  In opposition, Plaintiffs argue that they have pleaded the "who, what, when, where and how" with sufficient particularity and clarify each factor in detail.  (Opp'n 12.)  Plaintiffs further point out that "Rule 9(b)'s heightened pleading standard may be relaxed when the allegations of fraud relate to matters particularly within the opposing party's knowledge."  (*Id.*)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  California's FAL makes it unlawful for a business to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.  Rule 9(b)'s heightened pleading standards apply to UCL and FAL claims grounded in fraud.  *Vess,* 317 F.3d at 1103–06; *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009).  UCL and FAL claims alleging fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess,* 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).
/ / /

10

Plaintiffs' Complaint adequately articulates the "who, what, when, where and how" that is required to plead fraud under the UCL and FAL.  The first requirement is "who."  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant."  *Swartz v. KPMG LLP,* 476 F.3d 756, 765 (9th Cir. 2007).  Although the Complaint is not required to detail "participation by each conspirator in every detail in the execution of the conspiracy" to establish liability, a plaintiff must at a minimum, identify the role of each defendant in a fraud suit involving multiple defendants.  *Id.*  Plaintiffs adequately allege that Chaz Dean and Guthy-Renker acted "jointly" in the design, manufacture, marketing, sale, and distribution of WEN products.  (Compl. ¶ 26.)  Plaintiffs' Complaint specifically identifies Chaz Dean as "the founder of WEN" and "a Los Angeles-based hair care stylist who 'has a celebrity clientele list that reads like a who's who in Hollywood,'" and Guthy-Renker as "one of the largest and most respected direct marketing companies in the world."  *(Id.* ¶¶ 24, 26.)  Moreover, Chaz Dean's business relationship with Defendants is clearly described, or can be reasonably inferred, from the allegations.  (*Id.* ¶ 26.)  Chaz Dean "creates hair care products … including [WEN] products," while Guthy-Renker "credits itself for . . . marketing campaigns featuring some of today's leading celebrities."  (*Id.* ¶¶ 24, 26.)  The Court finds that these detailed allegations describing the respective roles of Defendants is sufficient to satisfy the "who" requirement under Rule 9.

Plaintiffs also properly allege the "what" requirement by pointing to the specific misrepresentations on which they relied when purchasing WEN products.  Plaintiffs' Complaint directly quotes numerous statements from WEN's website which details the product ingredients, directions for use, and safety, as well as claims that WEN will leave "hair with more strength . . . ."  (*Id.* ¶¶ 27–30.)  There are also allegations that Defendants' marketing scheme was ubiquitous and consistently misrepresented the safety of the products through numerous channels of communication.  (*Id.*)  With

1    regard to "when," Plaintiffs allege dates during which they purchased or used the

2    WEN products.  (*Id.*)   As to the "where," Plaintiffs contend they were exposed to

3    Defendants' alleged deceptive representations "by way of the WEN website, magazine

4    advertising, infomercials, television ads, QVC and other direct marketing channels."

5    (*Id.* ¶ 27.)   Lastly, with respect to the  "how" requirement, Plaintiffs contend that

6    Defendants misrepresented its hair care products as "gentle, natural, free from harsh or

7    damaging chemicals, conditioning and safe," while concealing the alleged fact that the

8    products contained a "depilatory or caustic agent, causing a chemical reaction that

9    damages the hair strand and/or follicle."  (*Id.* ¶¶ 31–33.)

10        The Court finds that these allegations put Defendants on notice as to "who,

11   what, when, where and how" as required for fraud claims under Rule 9(b).  Given the

12   sufficient detail in Plaintiffs' Complaint which lists Defendants' alleged fraudulent

13   representations, it is disingenuous for Defendants' to claim they have not received

14   sufficient notice of what is at issue in this case.  The policy supporting Rule 9(b)'s

15   heightened pleading requirements is that it "protects potential defendants—especially

16   professionals whose reputations in their field of expertise are most sensitive to

17   slander—from the harm that comes from being charged with the commission of

18   fraudulent acts." *Semegen*, 780 F.2d at 731.  Defendants clearly represented that their

19   products were safe, and Plaintiffs' pedestrian allegation that those representations

20   were made fraudulently does not place Defendants at any enhanced risk of

21   reputational harm.  Plaintiffs' allegations comply with Rule 9(b) thus protecting

22   Defendants from the inherent harm attached to fraud allegations.

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

## IV.    CONCLUSION

For the reasons discussed above, the Court hereby **DENIES** Defendants' Motion to Dismiss**.**  (ECF No. 23.)

**IT IS SO ORDERED.**


July 17, 2015

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**