**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CARYN COLLAZO, ET AL.,<br><br>Plaintiff,<br><br>v.<br><br>WEN BY CHAZ DEAN, INC., ET AL.,<br><br>Defendants. | Case No. 2:15-CV-01974-ODW-AGR<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REVISE BELLWETHER PLAINTIFF SELECTION PROTOCOL [121]** |

## I. INTRODUCTION

Plaintiffs filed their initial complaint on March 17, 2015, against defendants WEN by Chaz Dean, Inc., Guthy-Renker Ltd., and Guthy-Renker Partners, Inc. (Compl., ECF No. 1.) This complaint has been amended three times, and the case now consists of 638 plaintiffs. (ECF Nos. 43, 67, 86.) On June 28, 2017, the Court issued a Supplemental Scheduling Order, which stated that this matter is suitable for bellwether trials, and instructed the parties to come to an agreement regarding the manner in which plaintiffs would be chosen for the first bellwether trial. (ECF No. 80.)

On August 28, 2017, plaintiffs filed their Third Amended Complaint ("TAC"), which added GAR Laboratories, Inc. ("GAR") as a defendant. (ECF No. 86.) GAR now moves to revise the Plaintiff Selection Protocol agreed to by Plaintiffs and the other two defendants before GAR was added to the action. (ECF No. 121.) For the following

reasons, the Court **DENIES** GAR's motion.[1]

## II. BACKGROUND

WEN Cleansing Conditioner hair care products ("The Products") were developed by Los Angeles-based hair stylist, Chaz Dean, in collaboration with Guthy-Renker, a large direct marketing company. (Compl. ¶ 26.) Plaintiffs allege that GAR was utilized by Dean and Guthy-Renker to "manufacture, test and design the Products." (TAC ¶ 652, ECF No. 86.) Plaintiffs first filed this action as a putative class action with six plaintiffs. (Compl.) It has since grown to include 638 separate plaintiffs. (TAC.) In their Second Amended Rule 26 Joint Report, the parties stipulated that they did not intend to seek class certification, and that the cases are well-suited for bellwether trials.[2] (ECF No. 72.) Plaintiffs allege varying injuries related to the use of the Products including hair loss and damage, scalp injury, and rash. (*See generally*, TAC.)

The Court agreed that these cases are suited for bellwether trials, and ordered the parties to select 8-10 plaintiffs who are representative of all cases in the matter. (Supp. Scheduling Order, ECF No. 80.) For trial purposes, the plaintiffs have been divided into three categories based on severity of injury: severe (Category I), moderate (Category II), and mild (Category III). (Mot. ECF No. 121.) Category I consists of 19 plaintiffs (roughly 3% of the total), Category II consists of 226 plaintiffs (roughly 35%), and Category III consists of 393 (roughly 62%). (*See* Mot. 5.) Attorneys for the plaintiffs, WEN, and Guthy-Renker reached an agreement on September 7, 2017, that the first bellwether trial should consist of eight plaintiffs total; with each side choosing one Category I plaintiff, one Category II plaintiff, and two category III plaintiffs. (Declaration of Gabriel Padilla ("Padilla Decl.") Ex. B, ECF No. 121.) This results in a cohort of plaintiffs for the first trial of two Category I, two Category II, and four

---

[1] Having carefully considered the papers filed in support of and in opposition to the instant Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

[2] The bellwether trial process involves trying a smaller number of cases representative of the group as a whole, and then using those verdicts as a basis for settlement negotiations for the remaining cases.

Category III (*hereinafter* referred to as the 2-2-4 cohort). (*See id.*) GAR was added as a party with the filing of the TAC on August 28, 2017, but was not served until September 20, 2017. (Padilla Decl. 2–3.)

GAR filed this motion proposing a plaintiff selection plan different from the one agreed to by the other parties, arguing that the initial plan is unfair to defendants because Category I plaintiffs are overrepresented, and the 2-2-4 cohort is not representative of the plaintiffs as a whole. (Mot.)

### III. LEGAL STANDARD

A bellwether trial is a trial of individual cases designed "to produce reliable information about other mass tort cases." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (2004). These trials can "precipitate and inform settlement negotiations . . . by providing guidance on how similar claims may fare before subsequent juries." ELDON E. FALLON ET. AL., Bellwether Trials in Multidistrict Litigation, 82 TUL. L. REV. 2323, 2337 (2008). "Federal courts have the authority to conduct a 'bellwether trial' under Federal Rule of Civil Procedure 42(b)." *In re Hydroxycut Mktg. & Sales Practice Litig.*, 2012 U.S. Dist. LEXIS 93282, *50 (S. D. Cal. June 28, 2012). Rule 42(b) states: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, [or] claims . . . ." Fed. R. Civ. P. 42(b).

The Court has broad discretion in dictating the way in which a bellwether trial should operate, and the way plaintiffs should be chosen for trial. *See* FALLON, 82 TUL. L. REV. at 2337. "[E]ach transferee court that chooses to conduct its own bellwether trials must consider all the unique factual and legal aspects specific to its litigation and then fashion an appropriate, custom-made trial-selection formula." *Id.* The method of selecting test cases for trial is "limited only by the ingenuity of each . . . court and the coordinating attorneys." *Id.*

Bellwether trials can guide future settlement negotiations by showing how similar claims may fare before juries. *Id.* "If a representative group of claimants are tried to verdict, the results of such trials can be beneficial for litigants who desire to

settle such claims by providing information on the value of the cases as reflected by the jury verdicts." *Id.* (quoting *In re Chevron U.S.A.*, Inc., 109 F.3d 1016, 1019 (5th Cir. 1997)). Representativeness is a "core element" of a bellwether trial. *In re Chevron*, 109 F.3d at 1019. "The more representative the test cases, the more reliable the information about similar cases will be." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (2004). When selecting which cases should be tried in a bellwether trial, the process "should accurately reflect the individual categories of cases that comprises the [action] in toto, illustrate the likelihood of success and measure of damages within each respective category." FALLON, 82 TUL. L. REV. at 2343.

## IV. DISCUSSION

GAR makes numerous arguments as to why it believes the plaintiff selection protocol is inappropriate—the Court will address each in turn.

**A. Representativeness**

One of GAR's chief arguments is that because the Category I plaintiffs are the most severely injured, and are relatively few in number, they are not representative of the group of plaintiffs as a whole. (Mot. 12.) However, plaintiffs from all categories are alleging similar injuries, which vary in severity, from using the same products in the same ways. (*See generally*, TAC.) Category I plaintiffs are not outliers—they merely represent one end of the "range of cases" involved in this litigation. A bellwether trial should include the entire "range of cases" in order to determine the "range of values the cases may have . . . ." *In re Hydroxycut*, 2012 U.S. Dist. LEXIS 93282, at *51 (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (2004)).

GAR cites *In re Boston Scientific Corp. Pelvic Repair Systems Products Liability Litigation* as an example of parties offering unrepresentative cases for a bellwether trial. (Mot. Ex. K.) In that case, the court stressed that the bellwether cases chosen by the parties were "not representative based on age and other factors or because they had conditions that made the cases outliers (Alzheimer's disease, vaginal obliteration, participation in drug studies, active runner with infertility issues, etc.)" *In re Boston*

*Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.* MDL No. 2326, Pretrial Order No. 51 (S.D. W.Va, Aug. 7, 2013). These factors are much different than here where the Court is presented with similar plaintiffs who exhibit varying degrees of *severity* in their injuries, but whose injuries are generally congruent across the Categories. Plaintiff is correct to point out that various severities of injury determine the range of damages, but this is precisely what a bellwether trial attempts to discover. (Opposition to GAR's Motion ("Opp'n"), ECF No. 122); *see also* FALLON, 82 TUL. L. REV. at 2362 (stressing the importance that all the "major variables" across cases should be represented in a bellwether trial). Thus, it is important to include Category I plaintiffs in the first bellwether trial so that the full range of cases is represented.

**B. Separate Trials**

The ultimate goal of a bellwether trial is for the court to "enhance and accelerate both the [litigation] process itself and the global resolutions that often emerge from that process." FALLON, 82 TUL. L. REV. at 2325.

GAR's proposed modification to the existing plaintiff selection process involves three separate trials, one for each plaintiff class. (Mot. 12.) This is contrary to the goals of efficiency that a bellwether trial is designed to achieve. In arguing for a multiple trial plan, GAR again relies on authority that has significant differences from the present litigation. GAR uses *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789 (E.D. La. 2007) as an example of a court separating a litigation by "meaningful division." However, the court in *Vioxx* separated the cases by the type of alleged injury suffered (heart attack, stroke, or other), not the severity of those injuries, and proceeded with bellwether trials for a selection of plaintiffs who had suffered heart attacks. *In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d at 791.[3] Separating cases into different trials based

---

[3] GAR also relies on *In re Guidant Corp. Implantable Defibrillators Prods Liab. Litig.*, MDL No. 05-1708, 2008 U.S. Dist. LEXIS 17535, at *12 (D. Minn. Mar. 7, 2008) and *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355, 2003 U.S. Dist. LEXIS 27522, at *3 (E.D. La. Mar. 13, 2003) in this section of its motion. These cases both also make distinctions based on types of alleged injuries, not severity of injury.

on different types of injury makes sense because different injuries will require different showings of evidence to prove causation. However, in a case such as the present one, differing severities of similar injuries will require the same evidence for causation, and the differences in severity will be represented in the damages awarded. Thus, it is proper to keep all three categories of plaintiffs in this case together in one trial.

### C. Proportionality of Proposed Cohort

GAR argues that the proposed 2-2-4 cohort does not provide the "requisite statistical reliability" to allow the parties to draw inferences about the remaining plaintiffs from the bellwether trial cohort. (Mot. 19.) While there will be a greater percentage of Category I plaintiffs at trial than there are in this action as a whole (25% at trial vs. 3% of total plaintiffs), GAR's proposed solution, to separate this action into three separate trials, has already been rejected by the Court. The Court cannot in one trial rectify this disproportionality without trying upwards of 30 plaintiffs (one Category I plaintiff would constitute 3% of a 30 plaintiff cohort), and so many plaintiffs would result in an unmanageable trial.

Furthermore, each case tried to verdict will be used to demonstrate a likely outcome for other similar cases. The parties need not have 62% of the cases tried be Category III plaintiffs in order to get a sense of how they will negotiate around Category III issues. An eight-plaintiff trial is small enough that the jury will not become confused, and will be able to focus on rendering fair verdicts for each of the eight individual cases before them, which the parties can then extrapolate to the remaining cases in each category. The possible benefit from the proportionality of a 30 plaintiff cohort does not outweigh the extremely likely possibility of jury confusion from trying to keep straight 30 different cases in the same litigation.

Moreover, if the Court were to reduce the number of Category I plaintiffs to one (chosen at random), in an attempt to move the ratio in a more representative direction, this could have a detrimental effect on the purpose of the bellwether trial. It is important to try at least two cases from each category because in order for a bellwether trial to be

an effective guide for future negotiations, both sides need to agree on the reasonableness of the results. Only one verdict on a Category I case would make it too easy for whichever side does not agree with the result to cry "outlier" and refuse to negotiate settlements for similar cases based on that verdict. Two cases will give the parties another data point, each of which is believed by the plaintiffs and defendants to be their strongest case, respectively, and can more effectively shape future negotiations. Therefore, the 2-2-4 cohort initially proposed by the parties is the best way to proceed with the bellwether trial.

### D. GAR was Added After Negotiations Took Place

GAR also points out that it had not yet been added as a party in this litigation when the selection process was negotiated, and claims that had been it been a party it would not have agreed to this process. The Court did not impose the selection process on the parties, but rather instructed the parties to come to an agreement regarding selection. (Supp. Scheduling Order) This is exactly what they did, and after some negotiation the parties reached an agreement regarding selection on September 7, 2017. (Mot. Ex. K.) The selection process was therefore negotiated by defendants who are similarly situated to GAR, and have similar interests. Furthermore, the process of selecting plaintiffs from each category for trial was initially proposed on August 8, 2017, by counsel for the defendants. (*Id.*) The Court is unwilling to throw out the agreement negotiated by three of the four parties involved in this litigation because a defendant was added later, and therefore **DENIES** GAR's Motion.

### E. Power to Strike

GAR also proposes, as a component of the selection process, the parties select more cases than will go to trial, with each side having the ability to strike a certain number of cases from its opponent's roster. (Mot. 15.) Plaintiffs are not opposed to this request. (Opp'n 2–3.) To the extent the parties can agree on a proposed strike procedure, they may file a stipulation and proposed order for the Court's consideration.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant GAR's Motion to Revise the Bellwether Plaintiff Selection Protocol.

**IT IS SO ORDERED.**

July 12, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**